Jenifer L. Tomchak (10127) (jen.tomchak@tomchaklaw.com)
Nicole A. Skolout (10223) (nicole.skolout@tomchaklaw.com)
TOMCHAK SKOLOUT
10 West 100 South, Suite 700
Salt Lake City, Utah 84101
Telephone:  (801) 831-4820

*Attorneys for Plaintiff Ariella Gottlieb*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ARIELLA GOTTLIEB, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PRN HEALTH SERVICES LLC, a Wisconsin corporation,<br><br>Defendant. | **COMPLAINT AND JURY DEMAND**<br><br>Case No. 2:23-cv-00440-DBP<br><br>Judge Dustin B. Pead |

Plaintiff Ariella Gottlieb, by and through her undersigned counsel, hereby alleges, avers, and complains of Defendant PRN Health Services LLC ("PRN") as follows:

## PARTIES

1. Plaintiff Ariella Gottlieb ("Plaintiff" or "Gottlieb") is an individual who is a citizen of Utah and a resident of Salt Lake County, Utah.

2. Defendant PRN Health Services LLC ("Defendant" or "PRN") is a Wisconsin limited liability company.  Upon information and belief, none of the members of PRN are citizens of Utah.

1

3. At all times relevant to this Complaint, Gottlieb was employed by PRN while she was domiciled and living in Salt Lake County, Utah, and performed most of her work for PRN in Salt Lake County, Utah.  PRN also recruited and contracted with Gottlieb while she was domiciled and living in Salt Lake County, Utah; failed to pay her as set forth in this Complaint while she was domiciled and living in Salt Lake County, Utah; and terminated her employment while she was domiciled and living in Salt Lake County, Utah.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $75,000.00.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Alternatively, venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(3) because the Defendant is subject to the Court's personal jurisdiction with respect to this action.

## GENERAL ALLEGATIONS

6. In or around September 2022, PRN approached Gottlieb regarding an employment opportunity with the company.

7. At that time, Gottlieb was entertaining offers from a number of healthcare staffing companies, all offering her salaries in excess of $270,000 annual salary and a bonus, equity, and insurance package that made her total compensation package close to or over $500,000.

8. PRN needed her expertise to develop a new physician services division.  She had more than 25 years of experience as a healthcare consultant and specific experience in

developing clinical staffing solutions. This expertise was essential for the new sector PRN planned to develop.

9. PRN offered Gottlieb the position of Senior Vice President with the promise that she would be promoted to President of Workforce Solutions within 18 months of joining PRN.

10. Ms. Gottlieb turned down other employment offers based on promises that were made to her by Pete Hietpas, the President of PRN.

11. Specifically, Mr. Hietpas assured Ms. Gottlieb that PRN would be the company she would retire from. He told her that she would be hired as the Senior Vice President to set up PRN's physicians' services sector and within 12-18 months she would assume the role as PRN's President of Workforce Solutions.

12. PRN, through Hietpas, also represented to her that if she joined PRN, she would get the resources and autonomy she needed to be successful and that she would be compensated with a handsome bonus and commission package that PRN was developing and equity in the Company in January 2023.

13. Consistent with those promises, in its September 15, 2022 Offer Letter to Gottlieb, PRN indicated that Gottlieb (a) would be paid a base salary of $300,000; (b) would be paid 5% of the revenue for Master Service Program Vendor Management System (MSP/VMS) in year 1, 2.5% in year 2, and 1% in year 3 and thereafter; (c) would get a bonus of 30% of her salary ($90,00); (d) would get bonuses for direct and recruitment process outsourcing (RPO) business; (e) would receive equity in PRN, (f) would get employer subsidized medical insurance, access to medical dental, vision, life, short- and long-term disability, and a $25,000 life insurance policy; and (g) would be eligible to participate in the company's 401(k).

14. The letter also confirmed that she would be assigned an Executive Coach and a career path to be the President of Workforce Solutions.

15. In reliance upon and because of these promises, Gottlieb accepted the position at PRN and turned down the other lucrative offers.

16. Gottlieb began her employment with PRN on October 10, 2022.

17. While employed by PRN, Gottlieb did exactly what she had been hired to do. She used her vast experience in the healthcare staffing industry to develop the Locum Tenens program, a physician sector for the business, and outlined a profit and loss plan that would make this new sector profitable within a year.

18. She also secured a commitment for a large contract that will bring in $2 million annually for PRN.

19. She also initiated several more contracts that were and are moving forward thanks to her efforts, knowledge, and contacts.

20. She used her professional contacts and knowledge of people in the industry to recruit two critical members of the new sector and several other employees.

21. Despite her performance and meeting all of the established expectations (and PRN's initial praise and encouragement of such performance), PRN did not perform most of its contractual obligations.

22. It never assigned Ms. Gottlieb an Executive Coach, which indicates that it knew the promises it made about her career path at PRN were false when they were made.

23. It never paid her the promised bonuses for MSP/VMS or for meeting targets, nor did it develop the bonus and equity plans it had promised to provide to her.

24. Beginning around December 2022, Gottlieb discovered and expressed her concerns about some of PRN's discriminatory practices.[1]

25. Gottlieb raised these issues with her manager and with PRN's HR department.

26. Instead of addressing this discriminatory and unlawful conduct, PRN told her to ignore it because it was "just how [her supervisor] is" or words to that effect.

27. Gottlieb also expressed concerns about PRN not performing under the contract.

28. Shortly thereafter, PRN and her supervisor began treating her even worse.

29. They removed her from all of the executive calls, meetings, reports, and planning.

30. Her supervisor refused to speak with her and, instead, hired a new person to whom he directed her to report.

31. When PRN's discriminatory conduct exacerbated her disability, Ms. Gottlieb asked PRN for a reasonable accommodation of her disability.

32. PRN not only refused the accommodation, but sent her an entirely new job description that completely stripped her of her executive job duties and title, demoting her to a salesperson position.

33. PRN told Ms. Gottlieb she had no choice but to accept this demotion.

34. When she declined and reminded PRN that it was in breach of its contractual obligations to her, PRN fired her.

35. This termination was not only unlawful, but PRN has also failed and refused to pay Ms. Gottlieb amounts she has already earned.

---

[1] Ms. Gottlieb intends to seek leave to amend her complaint to assert specific allegations and claims related to the discrimination and retaliation she suffered once she has exhausted her administrative remedies.

36.    PRN's termination was especially vicious as it eliminated her healthcare at a time in which she was already in a vulnerable position.

37.    PRN knew the impact this would have on Ms. Gottlieb and her health and initially agreed to reinstate her medical insurance, but it has now failed and refused to follow through with that promise too.

38.    As a result of PRN's extreme, outrageous, and intentional conduct, Ms. Gottlieb's health has deteriorated significantly, which will likely impact her ability to find new employment.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

39.    Gottlieb realleges and incorporates the preceding paragraphs as if set forth fully herein.

40.    Gottlieb had a valid and enforceable contract with the PRN concerning her compensation, including the oral promises made to her both before and after she began her employment with PRN as memorialized in her Offer Letter.

41.    First, as memorialized in PRN's September 15, 2022 Offer Letter to Gottlieb, PRN contracted that Gottlieb (a) would be paid a base salary of $300,000; (b) would be paid 5% of the revenue for MSP/VMS in year 1, 2.5% in year 2, and 1% in year 3 and thereafter; (c) would get a bonus of 30% of her salary ($90,000); (d) would get bonuses for direct and RPO business; (e) would receive equity in PRN, (f) would get employer subsidized medical insurance, access to medical dental, vision, life, short- and long-term disability, and a $25,000 life insurance policy; and (g) would be eligible to participate in the company's 401(k).

42. At all times relevant to the allegations herein, Gottlieb performed all of her obligations under the contract.

43. PRN breached this contract by failing (a) to pay her 5% of the revenue for MSP/VMS in year 1 (and the appropriate percentages thereafter); (b) to pay her 30% of her salary as a bonus; (c) to timely define and provide bonuses for direct and RPO business; (d) to timely define and provide her equity in PRN; (e) to assign her an Executive Coach; and (f) to provide her the support and resources she needed to become the President of Workforce Solutions.

44. PRN also breached the agreement by unilaterally changing her position, duties, and compensation (after it had already been earned) without cause.

45. As a result of these breaches, Gottlieb has been damaged in an amount to be proven at trial, but no less than $1 million.

## SECOND CAUSE OF ACTION
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

46. Gottlieb realleges and incorporates the preceding paragraphs as though fully set forth herein.

47. The oral promises by PRN (as memorialized in the Offer Letter) constitute a valid and enforceable contract to which Gottlieb and PRN are parties.

48. Inherent within the foregoing contract is an implied covenant of good faith and fair dealing requiring PRN not to do anything that would deprive Gottlieb of her justified expectations to be promoted to President of Workforce Solutions and receive the compensation and other benefits promised and owed to her.

49. Had PRN asked Ms. Gottlieb if she would agree to allow PRN to demote her and remove all of its promises as soon as she used her experience, skills, and contacts to give PRN what it wanted—a new physician sector—and for discriminatory reasons, she would not have agreed.

50. PRN has breached the covenant of good faith and fair dealing by depriving Gottlieb of her justified expectations under the contract, by, among other things, intentionally interfering with her ability to become President of Workforce Solutions without cause, demoting her and depriving her of resources without cause, and unilaterally attempting to change the entire benefit package after substantial portions were already earned and threatening to fire her if she sought to enforce her contract.

51. PRN has also interfered with Gottlieb's justified expectations by failing and refusing to provide her with the resources it promised her, which were necessary for her to perform her job, and by interfering with her ability to perform her job by excluding her from all executive calls, reports, and planning meetings and refusing to even speak to her.

52. Gottlieb has been damaged as a result of such breach in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### PROMISSORY ESTOPPEL

53. Gottlieb realleges and incorporates the preceding paragraphs as if set forth fully herein.

54. Prior to and in connection with her acceptance of employment with PRN, PRN represented to Gottlieb that she (a) would play a key role in PRN far into the future, including by becoming its President of Workforce Solutions; (b) would receive a competitive base salary and

8

incentive and bonus compensation based on defined formulas or formulas that would be defined by January 2023; (c) would receive equity in PRN; and (d) would have the control of her team and resources needed to succeed at PRN.

55. PRN's representatives were adamant that PRN would be the company from which Ms. Gottlieb would retire.

56. In making these representations, PRN intended that Gottlieb rely on them.

57. In reasonable reliance on these representations, Gottlieb forwent other similar job offers to accept the position being offered by PRN.

58. Similarly, after Ms. Gottlieb began performing under the contract, PRN continued to reassure that she would be paid the bonuses and equity and developed into the presidential position promised to her as a way to induce her to continue her performance under the contract.

59. Gottlieb suffered a substantial detriment when PRN broke its promises to her, demoted her, refused to pay her as promised (and threatened to fire her if she objected), as soon as she used her experience, skills, and contacts to create a physician sector for PRN. In other words, PRN sought to avoid its performance after Ms. Gottlieb's performance was complete.

60. As a result of PRN's actions, Gottlieb has been damaged in an amount to be proven at trial and PRN should be estopped from avoiding its contractual obligations to her.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT

61. Gottlieb realleges and incorporates the preceding paragraphs as though fully set forth herein.

62. A substantial benefit was conferred upon PRN by Gottlieb when she developed a new sector for PRN and brought in new accounts that generated significant profits for PRN.

63. PRN knew of the benefit conferred upon it through Gottlieb's hard work and efforts and that she expected to be paid and promoted for such efforts.

64. PRN accepted this benefit and reassured Gottlieb of its intention to comply with her expectations, but, nevertheless, refused to compensate Gottlieb or to promote her as promised.

65. PRN's retention of compensation and other amounts owed to Gottlieb would be inequitable under the circumstances, and such monies should be awarded to Gottlieb in amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**FRAUDULENT INDUCEMENT**

66. Gottlieb realleges and incorporates the preceding paragraphs as though fully set forth herein.

67. In its communications and interactions with Gottlieb prior to her accepting PRN's offer of employment, PRN intentionally made false and material representations to Gottlieb concerning the terms of her employment. During those discussions, PRN made numerous, specific representations to Gottlieb about the resources that would be made available to her if she joined the company, the level of control she would have over her position if she joined the company, how she would be paid for her performance if she joined the company, and how she would be promoted to the role of President of Workforce Solutions.

68. These representations were false. After Gottlieb was hired, PRN failed to fulfill many of the promises it made to Gottlieb and acted in a manner to suggest that it never intended to perform those promises.

69. PRN knew that the representations it made to Gottlieb were false or they were made recklessly and without regard for their truth.

70. PRN made these representations to Gottlieb for the purpose of inducing her to accept employment with the company and to continue her employment with the company to use her skills, experience, and contacts to develop a physicians sector for it.

71. Gottlieb reasonably relied on PRN's representations in accepting employment with PRN and did not know that they were false at the time they were made.

72. As a direct, proximate, and foreseeable result of this reasonable reliance on PRN's representations, Gottlieb has been damaged in an amount to be determined at trial.

73. PRN's conduct was undertaken in bad faith, with malice, and with reckless indifference to Gottlieb's rights. Gottlieb is therefore entitled to punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

74. Gottlieb realleges and incorporates the preceding paragraphs as though fully set forth herein.

75. At all relevant times, Gottlieb was an employee of PRN.

76. Utah has a substantial and established public policy against theft, discrimination, and retaliation.

77. Gottlieb was constructively terminated from her employment with PRN for improper reasons unrelated to her performance. Specifically, PRN constructively terminated Gottlieb by refusing to pay her compensation and other benefits owed to her and for raising issues with PRN's management concerning its unethical and discriminatory business practices. When

Gottlieb raised these issues with management, PRN suddenly announced that it was changing her title and position and indicated it would not pay her bonus amounts that had already been earned or otherwise fulfill its obligations to her.

78. PRN's actions were willful and malicious or, in the alternative, were taken with knowing and reckless disregard for Gottlieb's rights.

79. Gottlieb is entitled to an award of compensatory and punitive damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
## INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

80. Gottlieb realleges and incorporates the preceding paragraphs as though fully set forth herein.

81. PRN intentionally and unilaterally re-wrote Ms. Gottlieb's contract, including to release her right to compensation that had already been earned, and told her to accept the new contract or be terminated at a time when it knew that Ms. Gottlieb was in a vulnerable physical condition and dependent on the healthcare she had through PRN.

82. PRN intentionally and viciously removed Ms. Gottlieb from its healthcare when she refused to release her existing contractual rights and when it knew doing so would cause a significant worsening of her health.

83. Such conduct was extreme and outrageous, and any reasonable person would have known that the aforementioned conduct would cause Ms. Gottlieb significant emotional distress.

84. Each of PRN's actions caused Ms. Gottlieb severe emotional distress, including significant physical manifestations of such emotional distress.

85. Ms. Gottlieb has been damaged in an amount to be proven at trial.

86. PRN's conduct was willful and malicious and manifests a knowing and reckless indifference towards and disregard of Ms. Gottlieb's rights. Accordingly, Gottlieb is entitled to punitive damages subject to Utah Code § 78B-8-202.

## PRAYER FOR RELIEF

WHEREFORE, Gottlieb prays for judgment in her favor and for the following relief:

1. An award of damages against PRN in an amount to be proven at trial but not less than $1,000,000;

2. An award of pre- and post-judgment interest to the maximum extent allowed by law;

3. An award of punitive damages as allowed for by law;

4. An award of attorney's fees and costs as allowed for by law;

5. Such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Gottlieb hereby requests trial by jury of all claims and issues triable of right by a jury.

DATED: July 9, 2023.

/s/ Jenifer L. Tomchak
TOMCHAK SKOLOUT
Jenifer L. Tomchak

*Attorneys for Plaintiff Ariella Gottlieb*